IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SONIA FALK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 12-C-1384 |
| ) | |
| KANE COUNTY SHERIFF PATRICK B. PEREZ, ) | |
| KANE COUNTY SHERIFF'S DEPUTY BRIAN ) | Hon. Judge Ruben Castillo |
| LEWIS, and WELLS FARGO BANK, ) | |
| ) | |
| Defendants. ) | |

## **WELLS FARGO BANK'S MOTION TO VACATE DEFAULT JUDGMENT**

Defendant Wells Fargo Bank ("Wells Fargo"), by and through its attorneys, hereby moves this Court, pursuant to Federal Rule of Civil Procedure 60(b), to vacate the judgment of default entered on July 17, 2013 ("Default Judgment"), and grant Wells Fargo additional time to answer or otherwise plead to Plaintiff's Third Amended Complaint ("the Complaint"), up to and including September 17, 2013. In support thereof, Wells Fargo states as follows:

**FACTUAL BACKGROUND**

1. This case was initiated on February 27, 2012, when Plaintiff filed a civil rights complaint against the Kane County Sheriff's Department claiming she was wrongfully evicted from her residence, located at 1059 Stephen Court, Aurora, Illinois ("Subject Property"), that she allegedly rented from Mr. Tommy L. Hillard ("Hillard"), its purported owner. (Dkt. 46 ¶ 16-18.)

2. On June 19, 2012, Plaintiff filed her First Amended Complaint, asserting claims against Kane County, the Kane County Sheriff, and an unknown Kane County Sheriff for violations of Section 1983 (42 U.S.C. § 1983) (Counts I and II), wrongful eviction under Illinois state law (Count III), indemnification (Count IV), and respondeat superior (Count V). (Dkt. 7.)

Plaintiff subsequently amended her complaint on September 26, 2012, and January 25, 2013, to name more parties and add more claims. (Dkt. 20, 46.)

3. Plaintiff's Third Amended Complaint, filed on January 25, 2013, renews her claims against the Kane County Sheriff's Department, and asserts claims against Wells Fargo for conversion of her personal property (Count III), wrongful eviction in violation of Illinois state law (Count IV), and a purported violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V). (*See* Dkt. 46.)

4. On February 4, 2013, Wells Fargo, who is <u>not</u> the mortgagor of the Subject Property, was served via its registered agent for service of process in the State of Illinois, Corporation Service Company, with a Summons and the Complaint. (*See* Declaration of Daniel Sweeney, dated August 19, 2013 ("Sweeney Decl."), attached hereto as Ex. A, at ¶ 5.) Although the Summons and Complaint were subsequently transmitted to the Legal Notice Process Group in the Corporate Trust Services division of Wells Fargo ("Legal Notice Process Group"), the documents were inadvertently misdirected to an unmanned electronic mailbox. (Sweeney Decl. at ¶ 6.) As a result, Wells Fargo was not actually aware of the litigation and failed to tender the Complaint and Summons to its loan's servicer, Rushmore Loan Management Services ("Rushmore"). (Sweeney Decl. at ¶ 6.) Pursuant to the governing transactional documents, Rushmore, as the loan servicer, is responsible for reviewing the Summons and Complaint, hiring counsel and answering or otherwise responding to the matter on behalf of the RMBS trust and Wells Fargo, as trustee. (Sweeney Decl. at ¶¶ 4, 6.)

5. On July 11, 2013, Wells Fargo was served with notice of a Motion for Judgment of Damages (the "Motion"), which, shortly thereafter, was successfully transmitted to the Legal Notice Process Group and reviewed by a member of that team. (Sweeney Decl. at ¶ 7.)

However, because certain information within the Motion and the Summons and Complaint typically used by the Legal Notice Process Group to identify Wells Fargo's relationship to the property at issue was misstated or otherwise inaccurate, the Legal Notice Process Group was unable to timely identify and tender the Motion to Rushmore for further review and response. (Sweeney Decl. at ¶ 7.) For example, the Complaint identifies the Subject Property as "1059 *Stevens* Court in Aurora, Illinois" on Page 2 and "1059 *Stephen* Court" on Page 3. (*See* Compl., Dkt. 46, at 2-3 (emphasis added).) Wells Fargo's records for the property, however, describe the address as "1059 Stephen Street." (Sweeney Decl. at ¶ 11a.) Moreover, the Complaint identifies Plaintiff—Sonia Falk—as a tenant occupying the home. Wells Fargo's records provide only that the borrower is Mr. Hillard and do not reference Plaintiff's alleged tenancy or even the property's occupancy. (Sweeney Decl. at ¶ 11b.) Furthermore, and unbeknownst to Wells Fargo prior to this week's investigation, Mr. Hillard conveyed the property to Ms. Falk by Warranty Deed in 2008, which makes her the purported owner of the Subject Property, not a "tenant," further complicating Wells Fargo's attempt to identify her relationship to the borrower of record. (*Id*.) Finally, and more importantly, Wells Fargo is captioned and identified in both the Complaint and the Motion as Wells Fargo Bank. (*See* Compl., Dkt. 46; Motion, Dkt. 60.) Wells Fargo has never held a mortgage securing the Subject Property. (Sweeney Decl. at ¶ 11c.) Wells Fargo's only relationship to the Subject Property and Plaintiff's claims is as trustee for two RMBS trusts (RMAC 2010-7 and RMAC 2010-B) that, at points, held the mortgage securing Mr. Hillard's promise to pay. (*Id*.)

6. On July 17, 2013, less than a week after Wells Fargo received the Motion and while it was still in the process of attempting to ascertain its connection to Plaintiff's claims and the Subject Property, the Court heard and granted Plaintiff's Motion. (*See* Dkt # 63.) The Court

entered a Default Judgment against Wells Fargo and in Plaintiff's favor in the total amount of $128,000, Plaintiff's alleged damages. (*Id.*)

7. Almost a month later, on August 9, 2013, Wells Fargo was served with the Default Judgment. (Sweeney Decl. at ¶ 8.) Upon receipt, the matter was immediately escalated to the attention of the Assistant Vice President of the Legal Notice Process Group, Daniel Sweeney. (*Id.*)

8. On or about August 12, 2013, after an extensive search of local land records and internal systems, Mr. Sweeney and the Legal Notice Process Group finally determined that Wells Fargo serves as trustee for the RMBS trusts that once held the mortgage to the property referenced in the Complaint. (Sweeney Decl. at ¶ 9.)

9. Mere days later, on August 15, 2013, Wells Fargo promptly retained Sheldon T. Zenner and the law firm of Katten Muchin Rosenman LLP ("Katten") to represent Wells Fargo in this litigation. (Sweeney Decl. at ¶ 10.) Katten quickly filed the instant Motion seeking to vacate the default judgment and obtain additional time for Wells Fargo to answer or otherwise plead to Plaintiff's Complaint, the underlying facts of which are still being investigated by Wells Fargo.

**ARGUMENT**

10. "This circuit has a well-established policy favoring a trial on the merits over a default judgment . . . and default judgments should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful." *Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 676 (7th Cir. 1987) (internal quotation marks omitted). Indeed, Federal Rule of Civil Procedure 60(b), which governs default judgment (*id.*), provides, in pertinent part, that "[o]n motion and on such terms

4

as are just, the court may relieve a party . . . from a final judgment, . . . for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). To succeed on a motion under Rule 60(b), a defendant need only "show (1) good cause for the default, (2) quick action to correct it, and (3) a meritorious defense to the complaint." *Passarella*, 810 F.2d at 676 (citation and internal quotation marks omitted). Each of these requirements is met here.

11. First, Wells Fargo had good cause for failing to timely respond to this litigation. For one thing, Plaintiff's errors in the Complaint made it difficult for Wells Fargo to ascertain its relationship to the Subject Property. Contrary to Plaintiff's allegations, she is not a tenant of the premises nor did Wells Fargo, who is <u>not</u> the mortgagor of the Subject Property, file the underlying foreclosure action or direct Plaintiff's eviction. (Sweeney Decl. at ¶¶ 11-12.) Second, although Plaintiff served Wells Fargo's registered agent with the Summons and Complaint, those documents were inadvertently misdirected to an unmanned electronic mailbox and thus, Wells Fargo did not have actual knowledge of Plaintiff's claims until it received and reviewed the Motion on July 11th, less than a week before the Default Judgment was entered by the Court. Wells Fargo did not willfully neglect its obligation in this litigation or seek to delay this litigation. Rather, the combination of errors and inadvertent missteps detailed above, coupled with the sheer volume of notices handled by the Legal Notice Process Group (*see* Sweeney Decl. ¶ 3), prevented Wells Fargo from timely asserting its defense. When, as in this case, a "defendant has a reasonable explanation for its conduct that excludes any possibility of willfulness, and the defendant has an obviously meritorious defense to the plaintiff's claim, [as detailed below,] the interests of justice—of allowing a trial on the merits to proceed to a

judgment that is fair and based on a full presentation of the evidence—demand that the default judgment be vacated and the case allowed to proceed to trial." *Passarella*, 810 F.2d at 678 (allowing motion to vacate where defendant forwarded the complaint and lawsuit information to its insurance company and mistakenly assumed that the insurance company—which did not receive the information—had answered the complaint).

12. Second, Wells Fargo has a number of defenses to the instant litigation. For example, Wells Fargo is not the mortgagor of the Subject Property nor does it have an interest in the property in its individual capacity. (Sweeney Decl. at ¶ 11c.) Wells Fargo did not file the underlying foreclosure nor did it direct Plaintiff's eviction. (Sweeney Decl. at ¶ 12.) Wells Fargo was not even aware that Plaintiff occupied the Subject Property. (Sweeney Decl. at ¶ 11b.) Moreover, Plaintiff is not a "tenant" of the Subject Property. She is the owner of the property as shown by a warranty deed that was recorded on May 14, 2010, with the Kane County Recorder of Deeds Office, transferring the Subject Property from Mr. Hillard to the Plaintiff. (*Id.*) Tellingly, Plaintiff omits this information from her pleading because as owner, and not tenant, of the Subject Property, Plaintiff cannot pursue her asserted claim for wrongful eviction, the foundation of all of her claims against Wells Fargo. In any event, to prevail on this Motion, Wells Fargo is not required to prove its defenses and need not even show a likelihood of success: "[Defendant's] actual likelihood of prevailing on his defenses is not the measure of whether he has a meritorious defense . . . . A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Bieganek v. Taylor*, 801 F.2d 879, 882 (7th Cir. 1986) (citation omitted). That burden has been met here.

13. Finally, there can be no question that Wells Fargo acted quickly to correct the default. The instant action was filed within 10 days of Wells Fargo receiving notice of the

6

default judgment. Courts have found even significantly longer timeframes to be timely. *See, e.g., Dimmitt & Owens Fin., Inc. v. U.S.*, 787 F.2d 1186 (7th Cir. 1986) (court allowed motion for default over three months after entry of the default judgment). Since Wells Fargo acted quickly, has "a reasonable explanation for its conduct that excludes any possibility of willfulness, and . . . has an obviously meritorious defense to the plaintiff's claim," Plaintiff's Default Judgment should be set aside.

14. Plaintiff would suffer no prejudice if the Default Judgment is vacated and Wells Fargo is allowed additional time to answer or otherwise plead. On the other hand, Wells Fargo would be greatly and unduly prejudiced if the Default Judgment were allowed to stand as a final adjudication on the merits.

WHEREFORE, Wells Fargo respectfully requests that this Court enter an order: (a) vacating the July 17, 2013, order entering a default judgment against Wells Fargo and in favor of Plaintiff; (b) granting Wells Fargo until September 17, 2003 to answer or otherwise plead to the Complaint, and (c) granting such other relief that the Court deems just and proper.

Dated: August 19, 2013                        Respectfully submitted,

                                                           WELLS FARGO BANK

                                                           By: */s/ Monica J. Mosby*
                                                                    One of Its Attorneys

Sheldon T. Zenner
Monica J. Mosby
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
(312) 902-5200
sheldon.zenner@kattenlaw.com
monica.mosby@kattenlaw.com

*Attorneys for Wells Fargo Bank*