# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SONIA FALK,                                          )
                                       )
        **Plaintiff,**                              )
                                         )
        v.                                          )
                                          )     **Case No. 12 CV 1384**
KANE COUNTY SHERIFF                                  )
PATRICK B. PEREZ, KANE                               )     **Chief Judge Ruben Castillo**
COUNTY SHERIFF'S DEPUTY                              )
BRIAN LEWIS, & WELLS FARGO                           )
BANK,                                                )
                                         )
        **Defendants.**                             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Sonia Falk brings this action under 42 U.S.C. § 1983 ("Section 1983") against Defendants Kane County Sheriff Patrick B. Perez ("Defendant Perez"), Kane County Sheriff's Deputy Brian Lewis ("Defendant Lewis"), and Wells Fargo Bank ("Wells Fargo") alleging violations of the Fourth and Fourteenth Amendments of the Constitution. (R. 46, Third Am. Compl. ¶¶ 4-6, 25, 30.) Presently before the Court is a motion to dismiss brought by Defendants Perez and Lewis ("Moving Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 48, Defs.' Mot. Dismiss.) For the reasons stated below, the motion is granted in part and denied in part.

## RELEVANT FACTS

In 2008, PNC Bank[1] began foreclosure proceedings on a residential home located at 1059 Stephen Court, Aurora, Illinois, 60502 ("Residence") and owned by Tommy Hillard. (R. 46, Third Am. Compl. ¶ 17.) On August 22, 2011, as a result of the foreclosure proceedings against Hillard, the Circuit Court of Kane County entered an "Order Approving Report of Sale and Distribution, Confirming Sale, and Order for Possession" ("August 22 Order")[2] of the Residence. (R. 46, Third Am. Compl. ¶ 16; R. 55-1, August 22 Order at 3.) The August 22 Order provides, in relevant part:

> That the successful bidder, or its assigns, is entitled to and shall have possession of the mortgaged real estate as of a date 30 days after entry of this Order, without further Order of Court, as provided in Section 15-1701 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1701);
>
> That in the event possession is so withheld, the Sheriff of Kane County is directed to evict and dispossess **Tommy L. Hillard** from the mortgaged real estate commonly known as 1059 Stephen Court, Aurora, 60502 without further Order of Court, and;
>
> That there is no just cause for delay in the enforcement of or appeal from this order.

(R. 55-1, August 22 Order at 3.) At the time the August 22 Order was entered, Plaintiff, who was not a named party in the foreclosure action, was a tenant in the Residence. (R. 46, Third

---

[1] Although Plaintiff identified Wells Fargo as the "Defendant Bank" in her third amended complaint, (R. 46, Third Am. Compl. ¶ 6), she previously identified PNC Bank as the "Defendant Bank" in her second amended complaint, (R. 20, Second Am. Compl. ¶ 6). In its answer to Plaintiff's second amended complaint, PNC Bank admitted that it initiated foreclosure proceedings on the Residence. (R. 38, PNC Bank's Answer ¶ 17.)

[2] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are ccentral to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Thus, because Plaintiff referred to the August 22 Order in her complaint, and Moving Defendants attached the August 22 Order to their memorandum of law in support of their motion to dismiss, (R. 49, Defs.' Mem., Ex. 1, August 22 Order at 13-16), the Court considers that document when ruling upon Moving Defendants' motion to dismiss.

Am. Compl. ¶¶ 3, 18.)  She was there under a signed lease and was current on her rent.  (*Id.* ¶ 18.)  Plaintiff alleges that Defendants did not file a supplemental petition against her in accordance with the Illinois Mortgage Foreclosure Act, 735 Ill. Comp. Stat. 5/15-1701(4) ("Illinois Foreclosure Act").  (*Id.* ¶ 21.)

Plaintiff alleges that on September 29, 2011, at roughly 12:30 p.m., Defendant Lewis, accompanied by three unknown individuals, came to her door and told her the group was there to remove her from the premises.  (*Id.* ¶¶ 7-8.)  Defendant Lewis stated that he was acting on behalf of the bank that held the mortgage to the Residence.  (*Id.* ¶ 9.)  Defendant Lewis did not show Plaintiff an eviction notice, a judgment from an unlawful detainer proceeding, or a warrant.  (*Id.* ¶ 10.)  Plaintiff avers that Defendant Lewis proceeded uninvited into her dwelling, went through her belongings, locked her out of the Residence, and took possession and control of her personal property along with the Residence.  (*Id.* ¶¶ 11-13.)  Defendant Lewis did not take any steps to secure or safeguard Plaintiff's personal property, and as a result, she lost her family heirlooms, furniture, clothing, identification, and checkbooks.  (*Id.* ¶¶ 14-15, 23.)

Plaintiff claims that Defendant Lewis's allegedly unlawful actions arose out of widespread policies and practices at the Kane County Sheriff's Department ("Department").  (*Id.* ¶ 27.)  Namely, she alleges that the Department, headed by Defendant Perez: (a) failed to adequately supervise, discipline and control its officers; (b) allowed such misconduct to continue as a matter of practice; (c) failed to secure and protect the rights of tenants in eviction and foreclosure actions; and (d) was deliberately indifferent to unlawful searches and seizures of tenants' property during evictions.  (*Id.* ¶¶ 27(a)-(d).)  Plaintiff does not allege additional facts regarding the Department's policies or practices.

## PROCEDURAL HISTORY

Though Plaintiff has filed a complaint and three amended complaints, (R. 1, 7, 20, 46),

the crux of her claim has remained relatively unchanged. The first and subsequent amendments

to the complaint resulted from appointment of counsel and from difficulties in identifying

Defendant Lewis as the officer who evicted her and Wells Fargo as the assignee of the mortgage

for the foreclosed Residence.

On February 27, 2012, Plaintiff initiated this action by filing a *pro se* complaint. (R. 1,

Compl.) At that time, she also sought the appointment of counsel. (R. 5, Pl.'s Mot. Counsel.)

The Court granted Plaintiff's motion for appointment of counsel and dismissed her initial

complaint without prejudice on March 22, 2012, so that Plaintiff could file a proper amended

complaint. (R. 6, Min. Entry.) On June 19, 2012, Plaintiff filed her first amended complaint

naming as defendants the Department, Kane County, and an Unknown Kane County sheriff, (R.

7, First Am. Compl.), who had identified himself only as "Brian," (*id.* ¶ 8). After unsuccessful

attempts to settle and the filing of a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim by the Department and Kane County, (R. 11, Min.

Entry; R. 13, Defs.' First Mot. Dismiss), the Court granted Plaintiff leave to amend her first

amended complaint on August 21, 2012, (R. 19, Min. Entry).

On September 26, 2012, Plaintiff filed a second amended complaint, naming as

defendants Perez and Lewis (who was previously identified as the Unknown Kane County

sheriff), PNC Bank, and National City Bank. (R. 20, Second Am. Compl. ¶¶ 4-6.) On

December 3, 2012, Moving Defendants moved to dismiss Plaintiff's second amended complaint

pursuant to Rule 12(b)(6) for failure to state a claim. (R. 31, Defs.' Second Mot. Dismiss.) PNC

Bank answered the second amended complaint on December 27, 2012, and stated that it had

merged with National Bank. (R. 38, PNC Bank's Answer ¶ 6.) More importantly, PNC Bank identified Rushmore Loan Management Services, LLC as the loan servicer during August and September 2011, for the mortgage at issue in the underlying foreclosure action and Wells Fargo (not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2010-7T) as the assignee of the Residence during August and September 2011. (R. 38, PNC Bank's Answer at 13.)

On January 18, 2013, Plaintiff sought leave to amend her complaint yet again, noting the difficulty in identifying "those private parties who caused [Plaintiff's] improper eviction." (R. 42, Pl.'s Mot. Amend at 1.) The Court granted the motion to amend on January 23, 2013, (R. 44, Min. Entry), and Plaintiff filed her third amended complaint on January 25, 2013, (R. 46, Third Am. Compl.). The third amended complaint replaced PNC Bank and National City Bank with Wells Fargo and retained Moving Defendants. (*Id.* ¶¶ 4-6.) A summons was issued to Wells Fargo on January 28, 2013, and returned executed on February 7, 2013. (R. 47, Executed Summons.) Wells Fargo subsequently failed to timely appear, answer, or otherwise plead to Plaintiff's third amended complaint, and on March 7, 2013, the Court entered a default judgment against Wells Fargo. (R. 51, Min. Entry.) The Court also retained jurisdiction to enter a final, specific judgment against Wells Fargo.[3] (*Id.*)

Plaintiff brings suit pursuant to 42 U.S.C. § 1983. (R. 46, Third Am. Compl.) In Count I, Plaintiff alleges that Defendant Lewis conducted an unlawful search and seizure of her dwelling and personal property during the eviction in violation of her Fourth Amendment rights. (*Id.* ¶ 25.) In Count II, Plaintiff avers that Defendant Lewis took possession of her property

---

[3] Wells Fargo has since moved to vacate the default judgment entered against it. (R. 66, Wells Fargo's Mot.) Because briefing on that motion has yet to be completed, the Court does not rule on Wells Fargo's motion in this memorandum opinion and order. (R. 68, Min. Entry.)

without providing due process, in violation of her Fourteenth Amendment rights. (*Id.* ¶ 30.) She sues Defendant Lewis in his individual capacity. (*Id.* ¶ 4.) Plaintiff also alleges that Defendant Lewis's misconduct was the result of Defendant Perez's "deliberate indifference to policies and widespread practices" in the Department. (*Id.* ¶¶ 27, 32.) Plaintiff also asserts several state-law claims: conversion (Count III); unlawful eviction in violation of the Illinois Forcible Entry and Detainer Act ("Illinois Entry Act"), 735 Ill. Comp. Stat. 5/9-101 *et seq.* (Count IV); a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat 505/1 *et seq.* (Count V); indemnification against the Department and Kane County pursuant to Article IX, Section 9-102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Illinois Tort Immunity Act"), 745 Ill. Comp. Stat. 10/9-102 (Count VI); and respondeat superior against the Department and Kane County (Count VII). (*Id.* ¶¶ 35-56.)

On February 20, 2013, Moving Defendants moved to dismiss Plaintiff's third amended complaint for failure to state a claim pursuant to Rule 12(b)(6). (R. 48, Defs.' Mot. Dismiss.) With respect to her federal claims, Moving Defendants raise three principal arguments. (R. 49, Defs.' Mem. at 2-8.) They first argue that Plaintiff has failed to state a well-pleaded claim under *Monell v. New York City Dep't. of Social Servs.*, 436 U.S. 658, 691 (1978), because she relies on "conclusory allegations" of a policy or practice which are insufficient under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (R. 49, Defs.' Mem at 3-4.) Second, Moving Defendants argue that because they were acting as state officials in their official capacity, they are immune from suit pursuant to the Eleventh Amendment. (*Id.* at 5-6.) Third, Moving Defendants argue that Defendant Lewis is entitled to "absolute quasi-judicial immunity" because he was acting in a judicial capacity when he carried out the August 22 Order. (*Id.* at 6-8.) In short, Moving

Defendants do not dispute that Plaintiff has sufficiently alleged that Defendants violated her Fourth and Fourteenth Amendment rights. Instead, they contend that Plaintiff's claim cannot reach Defendant Perez under *Monell* and that even if it could, Plaintiff's claim against them is barred under the Eleventh Amendment and "absolute quasi-judicial immunity."

On May 14, 2013, Plaintiff filed a response to Moving Defendants' motion to dismiss arguing that her *Monell* claim is sufficiently pleaded and that Defendant Lewis is not entitled to immunity because he did not execute the August 22 Order as written. (R. 55, Pl.'s Resp. at 6-8.) On May 31, 2013, Moving Defendants filed a reply in support of their motion to dismiss reiterating their arguments. (R. 57, Defs.' Reply.)

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When considering a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff by accepting as true all of the well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting

*Twombly*, 550 U.S. at 555). Furthermore, "[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). "'Plausibility' in this

context does not imply that the district court should decide whose version to believe, or which

version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

After all, "the plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at

678. Rather, to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give enough

details about the subject-matter of the case to present a story that holds together." *Swanson*, 614

F.3d at 404. Therefore, "the court will ask itself *could* these things have happened, not *did* they

happen." *Id.* (emphasis in original).

## ANALYSIS

### I. Whether Plaintiff's claims against Defendant Lewis are barred by the Eleventh Amendment

As an initial matter, the Court concludes that Plaintiff's claims against Defendant Lewis

are not barred by the Eleventh Amendment. It is well-established that the Eleventh Amendment

does not bar suits against state officials in their individual capacities. *Brown v. Budz*, 398 F.3d

904, 917 (7th Cir. 2005). Since Defendant Lewis is sued in his individual capacity, (R. 46, Third

Am. Compl. ¶ 4), the Eleventh Amendment does not bar Plaintiff's suit against him.

### II. Whether Defendant Lewis is immune from suit

Moving Defendants argue that "absolute quasi-judicial immunity" bars Plaintiff's suit

against Defendant Lewis. (R. 49, Defs.' Mem. at 6.) Quasi-judicial immunity is a form of

absolute immunity that derives from the common law doctrine of judicial immunity, *Richman v.*

*Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001), which shields "judges from liability for damages for

acts committed within their judicial jurisdiction," *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

Judicial immunity originated "as a device for discouraging collateral attacks and thereby helping

to establish appellate procedures as the standard system for correcting judicial error" and to

protect "judicial independence by insulating judges from vexatious actions prosecuted by

disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988). The Supreme Court has

recognized that while the application of judicial immunity may result in unfairness and injustice

to a litigant, it is nevertheless a "general principle of the highest importance to the proper

administration of justice that a judicial officer, in exercising the authority vested in him, shall be

free to act upon his own convictions, without apprehension of personal consequences to

himself." *Mireless v. Waco*, 502 U.S. 9, 11 (1991) (quoting *Bradley v. Fisher*, 13 Wall. 335, 347

(1872)) (internal quotation marks omitted); *Pierson*, 386 U.S. at 554 (Judicial immunity is "for

the benefit of the public, whose interest it is that the judges should be at liberty to exercise their

functions with independence and without fear of consequences.") (internal citations and

quotation marks omitted). Thus, the Supreme Court has instructed that the "touchstone" of

judicial immunity is the "'performance of the function of resolving disputes between parties, or

of authoritatively adjudicating private rights.'" *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429,

435-36 (1993) (quoting *Burns v. Reed*, 500 U.S. 478, 500 (1991)).

The Supreme Court has extended absolute judicial immunity "to certain others who

perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S.

193, 200 (1985); *see also Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) ("The absolute

immunity afforded to judges has been extended to apply to 'quasi-judicial conduct' of '[n]on-

judicial officials whose official duties have an integral relationship with the judicial process.")

(quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)). The Seventh

Circuit has recognized that absolute judicial immunity has been extended to non-judges in at least two circumstances. *Snyder v. Nolan*, 380 F.3d 279, 286 (7th Cir. 2004) (per curiam). First, non-judicial officers acting in a judicial capacity have been found to be immune when their conduct constitutes "quasi-judicial conduct," but not simply because they are part of the judicial process. *Id.* (citing *Richman*, 270 F.3d at 435). "When judicial immunity is extended to officials other than judges, it is because their judgments 'are functional[ly] comparable' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function.'" *Antoine*, 508 U.S. at 436 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20 (1976)), concluding that a court reporter was not entitled to claim judicial immunity "because court reporters do not exercise the kind of judgment that is protected by the doctrine of judicial immunity"). Thus, judicial immunity has been extended to federal hearing examiners and administrative law judges, *Butz v. Economou*, 438 U.S. 478, 512-13 (1978), and to federal and state prosecutors, *Imbler*, 424 U.S. at 424-26.

Second, when individuals have undertaken administrative actions pursuant to the explicit direction of a judicial officer, courts have made the judicial officer's immunity available to the subordinate so as to "prevent court personnel and other officials from becoming a lightning rod for harassing litigation aimed at the court." *Snyder*, 380 F.3d at 287 (quoting *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992)); *Richman*, 270 F.3d at 435). Thus, judicial immunity has been extended to "police officers, sheriffs, and other court officers who act in reliance on a facially valid court order." *Henry*, 808 F.2d at 1239 (holding that a sheriff acting to enforce an eviction and foreclosure order was entitled to quasi-judicial immunity); *see also Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009) (affirming district court's finding that sheriff's deputies who executed court orders to obtain property from homeowners were entitled to quasi-judicial

immunity where their actions did not exceed the court's orders); *Mays v. Sudderth*, 97 F.3d 107, 108, 113 (5th Cir. 1996) (holding that sheriff's deputies who strictly complied with facially valid judicial order to take plaintiff into custody were clothed "with the absolute judicial immunity enjoyed by the judge issuing the order"); *Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) (extending judicial immunity to an officer who executed a written temporary restraining order). Under these circumstances, the extension of absolute judicial immunity to law enforcement officers serves to protect judicial decision-making by discouraging collateral attacks against judges through officers who are merely executing the judge's order. *Richman*, 270 F.3d at 437. Extending judicial immunity under these circumstances also avoids the "untenable result of requiring . . . court officers who enforce properly entered judgments pursuant to facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them." *Id.* In other words, officers enforcing court orders should not be charged with evaluating the legality of the order, but simply with executing it.

Simply because an officer is executing a court order, however, does not necessarily mean that he is automatically immunized from all conduct he engages in while executing that court order. In extending absolute judicial immunity to officers, the Seventh Circuit distinguishes between cases in which "[t]he source of the plaintiff's wrong" is the court's order itself and cases in which "the challenged conduct is the manner in which the judge's order is carried out." *Richman*, 270 F.3d at 436-37 (declining to extend judicial immunity when sheriff's deputies' use of excessive force exceeded the judge's order to restrain a disruptive person in the courtroom). Specifically, "when the conduct directly challenged is . . . the manner in which [the judge's] decision is enforced . . . the law enforcement officer's fidelity to the specific orders of the judge

marks the boundary for labeling the act 'quasi-judicial.'" *Id.* at 436 (quoting *Martin v. Bd. of Cnty. Comm'rs*, 909 F.2d 402, 404-05 (10th Cir. 1990)).

Here, Moving Defendants argue that when Defendant Lewis evicted Plaintiff from the Residence, he was acting according to the terms of the August 22 Order, which was entered by a Kane County judge. (R. 49, Defs.' Mem. at 7.) Therefore, Moving Defendants argue that Defendant Lewis is entitled to the protections afforded by quasi-judicial immunity. (*Id.* 7-8.) Moving Defendants assert that the August 22 Order authorized "that the successful bidder be put in possession of the property within thirty days and that the Sheriff [intervene] if that d[oes] not happen." (R. 57, Defs.' Reply at 4.) Under this interpretation, in evicting Plaintiff, Defendant Lewis acted according to the terms of the August 22 Order by intervening to put the successful bidder into possession of the Residence, and therefore his actions are protected. Plaintiff contests Defendants' interpretation and argues that the August 22 Order only authorized Defendant Lewis to evict Hillard. (R. 55, Pl.'s Resp. at 7.)

Drawing all reasonable inferences in Plaintiff's favor, as the Court must on a motion to dismiss, the Court concludes that Defendant Lewis acted outside the scope of the August 22 Order and is therefore not entitled to the protections afforded by quasi-judicial immunity. The August 22 Order provides, in pertinent part:

> That the successful bidder, or its assigns, is entitled to and shall have possession of the mortgaged real estate as of a date 30 days after entry of this Order, without further Order of Court, as provided in Section 15-1701 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1701);

> That in the event possession is so withheld, the Sheriff of Kane County is directed to evict and dispossess **Tommy L. Hillard** from the mortgaged real estate commonly known as 1059 Stephen Court, Aurora, 60502 without further Order of Court, and;

(R. 55-1, August 22 Order at 3.) The first paragraph directs that the bidder is entitled to and shall have possession of the Residence, but it does not order the Kane County Sheriff to act

unconditionally to effect possession. Instead, the Kane County Sheriff is authorized to act only in the second paragraph. Specifically, the Kane County Sheriff is directed to act in the event that possession is withheld, and in that instance, the Kane County Sheriff is directed to evict and dispossess only Hillard. The inclusion of the second paragraph in the August 22 Order suggests that the first paragraph does not give blanket authorization to effect possession in whatever manner necessary. Rather, it suggests that only if necessary, the Kane County Sheriff can act to effect possession in a specifically limited way—through the eviction of Hillard and Hillard alone. Quasi-judicial immunity only extends to those acts specifically directed by a judge, and does not protect the manner in which an officer carries out a judge's directive. *Richman*, 270 F.3d at 437. Here, the August 22 Order did not authorize Plaintiff's eviction, and therefore, the Court concludes that Defendant Lewis's actions in this respect are not protected.

While Moving Defendants urge that the authorization to dispossess Hillard represents general authorization to dispossess any occupant, this interpretation is not supported. Moving Defendants first analogize Defendant Lewis's execution of the August 22 Order to the execution of a similar court order at issue in *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992) and argue that the August 22 Order directed Defendant Lewis to remove all tenants, including Plaintiff, from the Residence. (R. 57, Defs.' Reply at 4.) Moving Defendants' analogy is misplaced. In *Scott*, the order directed the Sheriff to "cause each and every person found in and upon such premises to be removed therefrom." *Scott,* 975 F.2d at 368. The *Scott* order authorized the removal of "all persons;" here, by contrast, the August 22 Order only authorizes the removal of Hillard. (R. 55-1, August 22 Order at 3.) *Scott* does not suggest that interpreting "Hillard" as a stand-in for "all persons" is appropriate; no such interpretation was necessary in *Scott*.

Second, the Kane County judge did not have authority to order Plaintiff's eviction. The Illinois Foreclosure Act provides that in foreclosure actions, "[a] lease of all or any part of the mortgaged real estate shall not be terminated automatically solely by virtue of the entry into possession by . . . the holder of the certificate of sale." 735 Ill. Comp. Stat. 5/15-1701(e). If the successful bidder in a foreclosure sale wishes to terminate an existing lease and evict a tenant who was not a party to the foreclosure action, the new owner may do so by "fil[ing] a supplemental petition for possession against [the tenant]." 735 Ill. Comp. Stat. 5/15-1701(h)(1). Following the filing of the supplemental petition, an occupant who is current on her rent is entitled to remain in possession of the property for 120 days following notice of the supplemental petition, or the duration of her lease if it is longer than 30 days, whichever is shorter. 735 Ill. Comp. Stat. 5/115-1701(h)(4). "No mortgagee-in-possession, receiver or holder of a certificate of sale or deed, or purchaser who fails to file a supplemental petition under this subsection during the pendency of a mortgage foreclosure shall file a forcible entry and detainer action against an occupant of the mortgaged real estate until 90 days after a notice of intent to file such action has been properly served upon the occupant." *Id.* Plaintiff alleges that she was not a named party to the foreclosure action, and that a supplemental petition was not filed against her. (R. 46, Third Am. Compl. ¶ 20.) Because a supplemental petition was not filed, a forcible entry and detainer action could not lawfully be filed against Plaintiff without notice. Thus, the Kane County judge could not have ordered her eviction. Because of the required supplemental proceeding against tenants in possession, it was reasonable for the Kane County judge to specifically limit the August 22 Order to the named party in the foreclosure action—Hillard. Therefore, in evicting Plaintiff, Defendant Lewis acted outside the scope of the August 22 Order,

both on the basis of the August 22's Order's plain text and on the basis of its probable interpretation.

Seeking to avoid this result, Moving Defendants rely on the underlying policy justifications for quasi-judicial immunity to argue that it should extend to Defendant Lewis. (R. 57, Defs.' Reply at 3-4.) Moving Defendants are correct to urge that Defendant Lewis should not be required to "act as a *de facto* appeals court and make legal interpretations of court orders." (R. 57, Defs'. Reply at 4.) Moving Defendants' argument that enforcing the August 22 Order as written against the correct person would require them to "parse, analyze, and interpret" it is hyperbolic at best. (R. 57, Defs'. Reply at 4.) In executing the August 22 Order, Defendant Lewis simply had to read the face of the August 22 Order and do as the judge directed: evict and dispossess Hillard, and only Hillard, in the event that possession of the Residence was withheld. For these reasons, the Court finds that Defendant Lewis is not protected by quasi-judicial immunity.

## III. Whether Plaintiff's Claims against Defendant Perez are barred by the Eleventh Amendment

### A. Nature of the suit against Defendant Perez

Plaintiff's complaint does not explicitly indicate whether she is suing Defendant Perez in his official or individual capacity.[4] "Where a complaint alleges that the conduct of a public official acting under color of state law gives rise to liability under Section 1983, [the Seventh Circuit] will ordinarily assume that he has been sued in his official capacity." *Kolar v. Sangamon Cnty. of State of Ill.*, 756 F.2d 564, 568 (7th Cir. 1985). If a plaintiff wishes to sue a public official in his individual capacity, she must expressly state her intent in the complaint. *Id.*

---

[4] Plaintiff's complaint reads: "Kane County Sheriff Patrick B. Perez is the duly elected Sheriff of Kane County at all times relevant to the events in this action. He is the operator of and final policymaker for the Kane County Sheriff's Department." (R. 46, Third Am. Compl. ¶ 5.)

Here, Plaintiff does not expressly purport to sue Defendant Perez in his individual capacity, and thus the Court assumes that she brings suit against Defendant Perez in his official capacity as Kane County Sheriff. Plaintiff's repeated references to Defendant Perez's official position—"duly elected Sheriff of Kane County," "operator and final policy maker for the Kane County Sheriff's Department," (R. 46, Third Am. Compl. ¶ 5)—also lend support to the Court's interpretation. *See Kolar*, 756 F.2d at 568 (noting plaintiff's repeated references to the defendant's official title and office).

Further, the Court notes that it is well-established that suits against government officials in their official capacity are suits against the governmental entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Thus, because Plaintiff sues Defendant Perez in his official capacity, the suit against him is a suit against the Department.

**B.      Eleventh Amendment Protection**

Moving Defendants argue that the Eleventh Amendment bars federal courts from deciding suits brought by private litigants against states or state agencies and that this prohibition extends to state officials acting in their official capacity. (R. 49, Defs.' Mem. at 5.) Therefore, they contend that the action against the Department is barred by the Eleventh Amendment because "its actions involved enforcing an order issued by a state court." (*Id.*)

The Eleventh Amendment to the Constitution provides, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. Although the language of the Eleventh Amendment does not explicitly bar suits against a State by its own citizens, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts

by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). If properly raised, the Eleventh Amendment bars official-capacity suits in federal court against a state, state agencies, or state officials. *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) (citing *Edelman*, 415 U.S. at 663). The bar of the Eleventh Amendment to suit in federal courts, however, "does not extend to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Therefore, whether the Eleventh Amendment bars suit against Defendant Perez in his official capacity depends on whether he was acting as a state official (in which case he is protected) or as a county official (in which case he is not protected) when establishing the policies that Defendant Lewis followed in executing the August 22 Order. *Scott*, 975 F.2d at 369.

A county sheriff is considered a state official if he is so designated by state law or if he is acting as an "arm of the state." *Scott*, 975 F.2d at 370-71. The Illinois Constitution designates a county sheriff as a county official, not a state official, *id.* at 370 (citing Ill. Const. art. VII, § 4(C)), and the Seventh Circuit has held that "when the sheriff 'performs his duties as the principal executive officer or chief law enforcement officer of the county, he acts as a county official' and the Eleventh Amendment does not apply," *Richman*, 270 F.3d at 439. Thus, because Illinois State law does not designate Defendant Perez as a State official, the Eleventh Amendment does not apply to bar suit against him on this basis. Nevertheless, "a county sheriff may act as an arm of the state when performing certain functions;" '[w]hen he does so, a suit challenging that conduct is against the state," and the Eleventh Amendment does apply to bar suit against the county sheriff. *Richman*, 270 F.3d at 439.

In determining whether a sheriff acts as an arm of the State of Illinois when performing particular functions, the Seventh Circuit considers the "degree of control exercised by Illinois over the conduct at issue and whether the Eleventh Amendment policy of avoiding interference with state (as opposed to county) policy is offended by the lawsuit." *Richman*, 270 F.3d at 439. Where county officials have a non-discretionary duty to execute a State court order, the Seventh Circuit has held that those county officials act as State officials in performing their duties. *Scott*, 975 F.2d at 371 (noting that 55 Ill. Comp. Stat. 5/3-6019, 5/3-6020 (formerly Ill. Rev. Stat. ch. 34, §§ 3-6019, 3-6020) gives county sheriffs a non-discretionary duty to execute state court writs). Thus, the Seventh Circuit has previously found that county sheriffs were acting as arms of the State of Illinois when executing a State court eviction order in a foreclosure action because the county sheriffs "had a statutory non-discretionary duty to execute [the state court order]." *Id.* Under these circumstances, county sheriffs are deemed State officials for purposes of Eleventh Amendment immunity. *Id.*

On the other hand, the Seventh Circuit has also recognized that "not all actions associated with carrying out the deputies' duty to execute the state court's orders are actions on behalf of the state." *Richman*, 270 F.3d at 439. In particular, a state exercises less control over the manner in which a court order is executed. Thus, when the alleged misconduct is the *manner* in which a state court order was executed, Eleventh Amendment protection does not apply. *See, e.g., id.* at 440 (holding that the Eleventh Amendment did not protect a sheriff's department when it allegedly failed to train deputies to avoid using excessive force in carrying out a court order and failed to supervise them); *Ruehman v. Sheahan*, 34 F.3d 525, 528-29 (7th Cir. 1994) (holding that a sheriff's department's system of tracking warrants was not protected because state law only required "the Sheriff to arrest the right people but [said] nothing about how he

should do it"). Importantly, in both *Richman* and *Ruehman*, state law mandates a result but is silent as to the manner in which that result is brought about. The *ends*, such as the execution of a court order, is protected; the *means*, such as the failure to train officers in how to execute the order, is not.

Here, Plaintiff alleges that Defendant Lewis's misconduct was the result of "Defendant Kane County Sheriff's deliberate indifference to policies and widespread practices in that" Defendant Perez failed to supervise, discipline, and control his officers, allowed the misconduct to continue as a matter of practice, and failed to adequately secure the rights of tenants in eviction and foreclosure actions, and that those practices constituted an official policy of the Department. (R. 46, Pl.'s Third Am. Compl. ¶¶ 27(a)-(d).) In determining whether the alleged misconduct was a state or county action, *Richman* is directly on point. In *Richman*, a state law directed sheriffs to "obey the lawful orders and directions of the court." 270 F.3d at 440 (quoting 55 Ill. Comp. Stat. 5/3-6023). A judge ordered sheriff's deputies to restrain a disruptive man in court, and in doing so, the deputies used excessive force. *Id.* at 433-34. The Seventh Circuit held that the sheriff's department could be held liable for its "failure to adequately train and supervise the deputies in deliberate indifference to the plaintiff's rights" because the state law only explicitly commanded "that sheriffs obey orders of Illinois courts," but did not direct the "sheriff's actions regarding the training and supervision of deputies in the use of force in carrying out state court orders." *Id.* at 440. Instead, training and supervision with respect to executing judges' in-court orders is a county, not a state function, and therefore unprotected by the Eleventh Amendment. *Id.*

Here, Illinois law commands that "Sheriffs shall serve and execute, within their respective counties, and return all warrants, process, orders and judgments of every description

that may be legally directed or delivered to them." 55 Ill. Comp. Stat. 5/3-6019. As in *Richman*, the law commands sheriffs to execute court warrants and orders but is silent as to the sheriff's responsibilities as it relates to the training and supervision of the officers executing those warrants. Consequently, the Court concludes that Defendant Perez's actions with respect to supervising, disciplining, and controlling his officers in the execution of eviction orders are county, not state actions. Therefore the Eleventh Amendment does not bar suit against Defendant Perez.

## IV. Whether Plaintiff's allegations are sufficient to state a claim against Defendant Perez

While the Eleventh Amendment does not protect Defendant Perez from Plaintiff's suit, Plaintiff's complaint must still state a plausible claim for relief. *Twombly*, 550 U.S. at 570. In Counts I and II, Plaintiff seeks relief through Section 1983 for alleged violations of her Fourth and Fourteenth Amendment rights, respectively. (R. 46, Third Am. Compl. ¶¶ 25, 30.) Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not itself provide substantive rights; rather, it is a vehicle for vindicating federal rights conferred elsewhere. *Ledford v. Sullivan*, 105 F.3d 354, 365 (7th Cir. 1997). Here, Plaintiff seeks to vindicate her Fourth and Fourteenth Amendment rights through Section 1983 against Defendant Lewis in his individual capacity and Defendant Perez in his official capacity. Although Moving Defendants do not challenge the sufficiency of Plaintiff's claims against Defendant Lewis, they argue that Plaintiff has failed to state a claim against Defendant Perez. (R. 49, Defs.' Mem at 3-4.)

There is no *respondeat superior* liability against municipalities under Section 1983. *Monell*, 436 U.S. at 691. In other words, Plaintiff cannot recover from Defendant Perez in his official capacity simply because Defendant Perez's employee, acting in the scope of his employment, is liable. Hence, Defendant Lewis's alleged liability does not automatically render Defendant Perez liable under Section 1983. Instead, governmental liability under § 1983 attaches "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. Thus, a plaintiff seeking to recover from a municipality under Section 1983 must show either "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a custom or usage causing the loss; [or] (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). Here, Plaintiff does not allege that an express policy or a person with final policymaking authority caused her loss. Instead, Plaintiff alleges that a widespread practice constituting a custom or usage caused her loss. (R. 46, Third Am. Compl., ¶¶ 27(a)-(d).)

To show a widespread practice constituting custom or usage, Plaintiff must show "that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible . . . to infer that there is a municipal policy at work." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). Post-*Iqbal*, courts accept well-pleaded facts as true and draw all reasonable inferences from them, but excise from the complaint legal conclusions and conclusory allegations that are not entitled to the presumption of truth. *McCauley v. City of Chi.*, 671 F.3d 611, 617-18 (7th Cir. 2011). Thus, Plaintiff must plead facts from which the Court, drawing all reasonable inferences in her favor, may infer that there is a true municipal policy at issue, rather than a random event.

Plaintiff alleges that (a) Defendant Perez failed to "adequately supervise, discipline, and control its officers," (b) Defendant Perez "allowed [conduct such as Defendant Lewis's] to continue as a matter of practice," (c) Defendant Perez "fail[ed] to adequately secure and protect the rights of tenants in eviction and foreclosure actions" "as a matter of widespread practice so prevalent as to comprise policy," and (d) that "the practices . . . [of] unlawfully searching and seizing the personal property of tenants during evictions constitute[d] the custom or unofficial policy of the Department." (R. 46, Third Am. Compl. ¶¶ 27(a)-(d).) Here, by alleging "widespread practices," "customs," and "unofficial policies," Plaintiff merely states boilerplate legal conclusions that are the elements of her *Monell* claim. Plaintiff names the wrongs she suffered and alleges that they resulted from a policy or custom. These bare allegations of a policy or custom are not entitled to the presumption of truth. At most, Plaintiff's factual allegations in Counts I and II support only the inference that there was an illegal search and seizure and denial of due process against her. The single incident that Plaintiff successfully alleges is not sufficient to satisfy the requirements to plead a *Monell* claim under *Twombly* and *Iqbal*.

In further support of their motion to dismiss, Moving Defendants cite *S.J. v. Perspectives Charter Sch.*, 685 F.Supp.2d 847 (N.D. Ill. 2010). (R. 49, Defs.' Mem. at 4.) There, the plaintiff alleged that the defendants had a policy of failing to "properly train employees" that led to an illegal strip search of a student. *Id.* at 857. The plaintiff failed to allege any specific incidents other than the search of the student and made non-specific allegations of an underlying policy. *Id.* The district court held that under *Iqbal*, the *Monell* allegations were "mere legal conclusion[s]" and dismissed the case. *Id.* As in *S.J.*, Plaintiff's pleading is deficient because it merely alleges that the target of the *Monell* claim had a widespread policy, practice, or custom

22

that enabled the underlying misbehavior. (R. 46, Third Am. Compl. ¶¶ 27(a)-(d).) Plaintiff's claim that Defendant Perez failed to "supervise, discipline, and control its officers," (*id.*), is directly analogous to *S.J.*'s allegations that Defendants failed to "properly train employees in the legality of searches, and in particular in the legality of strip searching minor students at school." Complaint at ¶ 48, *S.J.*, 685 F.Supp.2d 847 (No. 09-CV-444). Plaintiff attempts to distinguish *S.J.* by arguing that in her pleading, unlike the complaint in *S.J.*, she has "alleged the precise nature of the Fourth Amendment violations which comprise widespread policy and practice." (R. 55, Pl.'s Resp. at 3-4.) First, Plaintiff's argument that *S.J.* is distinguishable because she pleads the underlying misbehavior—Defendant Lewis's violations—in greater detail is irrelevant in determining the sufficiency of her *Monell* claim because a *Monell* claim attacks the policy and customs of a municipality and not the underlying misconduct. Second, the complaint in *S.J.* also provided a clear factual account of underlying misconduct, and thus Plaintiff's attempt to distinguish *S.J.* on this basis is unavailing. Complaint at ¶¶ 17-23, *S.J.*, 685 F. Supp. 2d 847 (No. 09-CV-444).

Plaintiff, further seeking to avoid dismissal, urges that *Eckhert v. City of Chicago*, No. 08 C 7397, 2009 WL 1409707, at *6 (N.D. Ill. May 20, 2009), supports her claim. (R. 55, Pl.'s Resp. at 4.) In *Eckhert*, the district court held that plaintiff's claim that the defendants had policies of failing to provide reasonable medical attention, of failing to train, supervise, discipline, monitor, counsel or control officers, and of a code of silence were sufficiently specific to state a claim. *Id.* at *6. *Eckhert*, however, is unpersuasive because the decision was issued before the Seventh Circuit established that *Iqbal* applied to *Monell* claims. *Id.* (concluding that post-*Twombly* other courts in this District have not required plaintiffs "to plead with specificity the existence of . . . a municipal policy"). Subsequent Seventh Circuit precedent clearly applies

the *Iqbal* standard to Section 1983 *Monell* claims and disregards conclusory statements in the pleading. *See, e.g., McCauley*, 671 F.3d at 617-18 (applying *Iqbal* and disregarding conclusory statements in a *Monell* claim). Thus, the persuasiveness of the analogy to *Eckhert* is limited because *Iqbal* changed the standard for evaluating the sufficiency of *Monell* claims. In sum, the Court dismisses Plaintiff's *Monell* claim against Defendant Perez because it is not sufficiently pleaded.

## V.    Plaintiff's Illinois State law claims

In Counts III through VII, Plaintiff makes pendant state-law claims of conversion (Count III), wrongful eviction (Count IV), consumer fraud (Count V), indemnification (Count VI), and respondeat superior (Count VII). (R. 46, Third Am. Compl. ¶¶ 35-56.) As against Defendant Perez, the Court lacks subject matter jurisdiction over the pendant state-law claims. "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). Having dismissed the *Monell* claims against Defendant Perez, the Court relinquishes jurisdiction over the remaining state-law claims against the Department and dismisses Defendant Perez.

As to Defendant Lewis, however, because the Court is denying Moving Defendant's motion to dismiss the Section 1983 claims in Counts I and II against him, the Court has supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367. Moving Defendants argue that Plaintiff's state law claims should be dismissed because: (1) the Illinois Tort Immunity Act immunizes Defendant Lewis from Plaintiff's conversion claim; (2) the only remedy available under the Illinois Entry Act is the right to the property, which Defendant Lewis cannot provide; (3) the complaint fails to state an ICFA claim because Defendant Lewis is not

subject to the ICFA and his actions do not constitute "trade" or "commerce" as defined by the ICFA; (4) Plaintiff cannot recover from Kane County or the Kane County Sheriff on the indemnification and respondeat superior claims; and (5) the proper court for Plaintiff's state-law claims is in the Illinois Court of Claims. (R. 49, Defs.' Mem. at 8-12.) The Court addresses each argument in turn.

## A.     Whether Defendant Lewis is immune under the Illinois Tort Immunity Act

In Count III, Plaintiff seeks to recover in a state-law conversion claim for the loss of her personal property resulting from the eviction. (R. 46, Third Am. Compl. ¶¶ 35-40.) Defendant Lewis argues that he is entitled to immunity under the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10 (2013). (R. 49, Defs.' Mem. at 8.) The Illinois Tort Immunity Act is meant to "protect local public entities and public employees from liability arising from the operation of government." 745 Ill. Comp. Stat. 10/1-101.1. In order to protect the operation of government, the Illinois Tort Immunity Act immunizes public entities and their employees when they are engaged in one of a list of enumerated activities, including, for example, execution or enforcement of the law, 745 Ill. Comp. Stat. 10/2-202, and entry upon property, 745 Ill. Comp. Stat. 10/2-209.

Defendant Lewis contends that he is immune from Plaintiff's conversion claim because in executing the August 22 Order he was executing or enforcing a law, (R. 57, Defs.' Reply at 5), and his entry on the property was authorized by law, (R. 49, Defs.' Mem. at 8). The Illinois Tort Immunity Act provides: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. First, as discussed above, Defendant Lewis was not enforcing any law because in evicting Plaintiff, he was not executing the court order to evict Hillard. Second,

even if Defendant Lewis was found to be acting pursuant to the August 22 Order, Plaintiff has alleged facts that, when viewed in the light most favorable to her, are sufficient to establish willful and wanton conduct. In Illinois, to successfully plead willful and wanton conduct, "a plaintiff must . . . allege 'either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff.'" *Kirwan v. Lincolnshire-Riverwoods Fire Protection Dep't*, 811 N.E.2d 1259, 1263 (Ill. App. Ct. 2d Dist. 2004) (quoting *Adkins v. Sarah Bush Lincoln Health Ctr.*, 544 N.E.2d 733, 743 (Ill. 1989)). Here, Plaintiff alleges that during the eviction, Defendant Lewis told Plaintiff he would wait for her to rent a truck to secure her belongings, but when she returned she was locked out of her house and she lost her belongings. (R. 55, Pl.'s Resp. at 1.)[5] Viewed in the light most favorable to Plaintiff, Defendant Lewis's actions that deprived Plaintiff of her property could be construed as deliberate, utterly indifferent, or in conscious disregard to her welfare. Therefore, Section 202 of the Illinois Tort Immunity Act does not provide immunity to Defendant Lewis.

Moving Defendants further argue that Defendant Lewis is immune because the Illinois Tort Immunity Act establishes immunity for damages arising from lawful entry onto land. (R. 49, Defs.' Mem. at 8.) "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law." 745 Ill. Comp. Stat. 10/2-209. Defendant argues that Section 209 immunizes Defendant Lewis from Plaintiff's conversion claim. In support, Defendant cites *Owusu v. Grzyb*, 749 F. Supp. 897, 907 (N.D. Ill. 1990) (noting that when the law authorizes the Sheriff to make an entry upon the land, the

---

[5] The Seventh Circuit allows plaintiffs to add additional facts to a "brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." *Help At Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001) (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992)). Here, Plaintiff's additional facts are consistent with her complaint, and the Court therefore takes these facts into account when ruling on the instant motion to dismiss.

Sheriff is entitled to judgment as a matter of law). However, Section 209 is inapplicable to Plaintiff's conversion claim because it offers immunity for trespass, but not for all torts committed while on another's land. In *Owusu*, defendants successfully invoked Section 209 to dismiss the trespass claim. *Id.* at 906-07. However, the court did not apply Section 209 to dismiss assault and battery claims that took place while the defendants were on plaintiff's land. *Id.* at 906. Here, while Section 209 immunizes Defendant Lewis for lawful entry onto land, Section 209 does not immunize him from the alleged conversion that took place during that entry. Hence, the Illinois Tort Immunity Act does not apply to Defendant Lewis. Therefore, Defendant's motion to dismiss Count III is denied.

### B. Whether Defendant Lewis can be liable for wrongful eviction

In Count IV, Plaintiff seeks recovery for a "Wrongful Eviction—Unlawful Detainer" under the Illinois Entry Act, 735 Ill. Comp. Stat. 5/9-101, and under the Protecting Tenants at Foreclosure Act of 2009, Title VII of the Helping Families Save their Homes Act of 2009, Pub. L. No. 111-22 (2009) (codified at 12 U.S.C. § 5220 note) (the "PTFA"). (R. 46, Third Am. Compl. ¶¶ 41-45.) The "sole issue governed by the [Illinois Entry Act] is possession." *Matter of Williams*, 144 F.3d 544, 547-48 (7th Cir. 1998). The purpose of the Illinois Entry Act is to "quickly restore an aggrieved party to possession of his land and to prevent breaches of the peace caused by the common law method of regaining possession of property through self-help." *Id.* (citing *Yale Tavern, Inc. v. Cosmopolitan Nat'l Bank*, 632 N.E.2d 80, 85 (Ill. App. Ct. 1st Dist. 1994)). In other words, the Illinois Entry Act is meant to provide aggrieved landowners a legal avenue to regain possession of their property in order to avoid any undesirable efforts to effect possession on their own. The Illinois Entry Act gives a right action to "[t]he person entitled to the possession of lands or tenements" in order to "restore [them] thereto." 735 Ill. Comp. Stat.

27

5/9-102. Since the only remedy the Illinois Entry Act provides to an aggrieved party is repossession of their property, and since Defendant Lewis is not in possession, the Illinois Entry Act cannot support an action against him. The Court's research finds no examples of wrongful-eviction suits against police officers who evict occupants under color of a court order. In fact, evictions by law enforcement—rather than through self-help—are precisely what the Illinois Entry Act is meant to encourage.

Plaintiff cites *Dargis v. Paradise Park, Inc.*, 819 N.E.2d 1220, 1232 (Ill. App. Ct. 2d Dist. 2004) to argue that when an "unlawful eviction exposes a tenant's property to theft or loss the tortfeasor is responsible for the value of that property." (R. 55, Pl.'s Resp. at 9.) In *Dargis*, the plaintiff sued his landlord for negligent failure to protect property and conversion after an allegedly unlawful eviction. *Dargis*, 819 N.E.2d at 1224. Because the eviction was unlawful, it established the landlord's duty to protect against loss of the tenant's property. *Id.* at 1231-32. Here, the allegedly unlawful eviction may establish a duty Defendant Lewis owed to Plaintiff in her claim for conversion, but it does not save Plaintiff's claim for wrongful eviction.

Plaintiff further seeks recovery under the PTFA. (R. 46, Third Am. Compl. ¶ 44.) The PFTA defines the property rights that a subsequent taker of a foreclosed property has with respect to bona fide tenants. 12 U.S.C. § 5220 note. In particular, successors-in-interest take the property subject to the interests of the existing tenants and may only take possession from them by giving tenants at least 90 days written notice of possession. *Id.*; *see also* Tenants at Foreclosure Act: Guidance on Notification Responsibilities Under the Act With Respect to Occupied Conveyance, 75 Fed. Reg. 66,385, 66,385-86 (Oct. 28, 2010). Importantly, nothing in the text of the PTFA explicitly creates a private cause of action, and courts addressing the issue have found that there is no evidence of any congressional intent to create a private right of action

from the language of the PTFA. *Logan v. U.S. Bank National Ass'n*, 722 F.3d 1163, 1173 (9th Cir. 2013) ("Because we cannot infer a congressional intent to create a private right of action from the language of the statute, the statutory structure, or any other source, 'the essential predicate for implication of a private remedy simply does not exist.'" (quoting *Thompson v. Thompson*, 484 U.S. 174, 179 (1988)); *Nativi v. Deutsche Bank Nat. Trust Co.*, No. 09-06096 PVT, 2010 WL 2179885, at *2-*4 (N.D. Cal. May 26, 2010) (concluding that in enacting the PTFA "Congress did not intend to create a private right of action remedy, but rather intended to provide tenants additional rights which could be used in state court proceedings.") For these reasons, Count IV is dismissed.

### C. Whether Defendant Lewis can be liable under the ICFA

In Count V, Plaintiff alleges that Defendant Lewis violated the ICFA. (R. 46, Third Am. Compl., ¶¶ 46-50.) The ICFA "provides a remedy for 'unfair methods of competition and unfair or deceptive acts or practices' in specific commercial transactions." *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (quoting 815 Ill. Comp. Stat. 505/2.) The ICFA declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 Ill. Comp. Stat. 505/2. "The elements of a claim under ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)).

Moving Defendants argue that the act of evicting Plaintiff from the Residence does not constitute "trade" or commerce" as defined by the ICFA. (R. 49, Defs.' Mem. at 9.) "The terms

'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. Ann. 505/1(f). Defendant Lewis's eviction of Plaintiff was not "advertising," "offering for sale," "sale," or "distribution," and thus does not qualify as trade or commerce under the Act. Therefore, Count V is dismissed with respect to Defendants Lewis and Perez.

> **D.** **Whether Plaintiff can recover from Kane County or the Department for indemnification of Defendant Lewis or respondeat superior**

While Plaintiff does not name Kane County as a party in her complaint, (R. 46, Third Am. Compl. ¶¶ 3-6), Counts VI and VII seek recovery for Defendant Lewis's misconduct from Kane County on indemnification and respondeat superior theories. (*Id.* ¶¶ 51-56.) The mention of Kane County in these counts appears to be a legacy of the First Amended Complaint, which named Kane County as a defendant. (Compare R. 7, First Am. Compl. ¶ 5.) Plaintiff subsequently dropped Kane County as a defendant in her later amended complaints. Moving Defendants acknowledge that Kane County will be liable for any judgment entered against the Department, (R. 49, Defs.' Mem. at 11), but that there is no separate claim against Kane County other than its potential liability to satisfy a judgment against the Department, (*id.* at 12).

Plaintiff's indemnification and respondeat superior counts also seek recovery from Defendant Perez as the Director of the Department. (R. 46, Third Am. Compl. ¶¶ 53, 55-56.) As noted earlier, however, the Court lacks subject matter jurisdiction over the state-law claims pertaining to Defendant Perez in his official capacity and therefore has dismissed Defendant Perez from this suit. Therefore, the Court dismisses Counts VI and VII.

### E. Whether Plaintiff's state law claims belong in the Illinois Court of Claims

Moving Defendants finally argue that the Court lacks jurisdiction over Plaintiff's state law claims because they are claims against the State of Illinois and hence belong in Illinois Court of Claims. (R. 49, Defs.' Mem. at 10.) Illinois law provides that the Court of Claims shall have exclusive jurisdiction over "[a]ll claims against the State for damages sounding in tort if a like cause of action would lie against a private person or corporation in a civil suit." 705 Ill. Comp. Stat. 505/8 (2013). As discussed above, the Illinois Constitution considers sheriff's departments to be county, rather than state officials. Relying on *Scott*, 975 F.2d at 371-72, Moving Defendants argue that in executing the August 22 Order Defendant Lewis was acting as an arm of the state. (R. 49, Defs.' Mem. at 10-11.) Therefore, they contend, Plaintiff's state law claims are against the State of Illinois and belong in the Illinois Court of Claims. (*Id.*) As discussed above, however, Defendant Lewis was not engaged in state action when he executed the August 22 Order and evicted Plaintiff, and he therefore was not acting as an arm of the state. Therefore, the Illinois Court of Claims does not have exclusive jurisdiction over this civil law suit, and Defendant's motion to dismiss on these grounds is denied.

## CONCLUSION

For the reasons set forth above, Moving Defendant's motion to dismiss (R. 48, R. 49) is GRANTED in part and DENIED in part. In particular, all counts against Defendant Perez are dismissed, as are Counts IV and V against Defendant Lewis. Furthermore, because Counts VI and VII are asserted against defendants who are no longer parties to this action, they are also dismissed. Counts I, II, and III survive as against Defendant Lewis. In light of this opinion, the parties are requested to exhaust all settlement discussions. The parties shall appear for a status hearing on October 15, 2013, at 9:45 a.m.

Entered: _____

**Chief Judge Ruben Castillo**
**United States District Court**

**September 12, 2013**